Hoffman & Morton Company, Appellee, v. American Insurance Company, Appellant.

Gen. No. 48,145.

First District, First Division.

April 16, 1962.

Clausen, Hirsh, Miller & Gorman, of Chicago (Jerome H. Torshen, of counsel), for appellant.

Ruttenberg & Ruttenberg, of Chicago (Marvin H. Ruttenberg, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is an action on an insurance policy to recover the value of furs lost while being shipped from New York to Chicago. At the close of all the evidence, both parties moved for a directed verdict, and the court directed a jury verdict for plaintiff. Defendant appeals from a judgment entered on the verdict, against defendant, for $2695.

The material facts are not in dispute. The policy of insurance upon which this action is based is known

as a "Furriers' Block Policy" and was issued by defendant American Insurance Company to plaintiff, Hoffman & Morton Company, a partnership. Plaintiff, a Chicago retail furrier, was advised that as of March 1, 1957, it was covered by American on an oral binder, because plaintiff was in the process of moving from one location to another, and the policy, which required the inclusion of pertinent information relative to the newly occupied premises, would be issued later.

On May 14, 1957, furs purchased in New York for plaintiff, by its representative, George Bloom, a New York fur buyer, were shipped to plaintiff in Chicago by Bloom, via air freight, and were lost in transit. When Bloom shipped the furs, valued at $2945, he placed a value declaration on them of $250. The furs were not received, and later "Wings & Wheels," the air freight forwarder, informed plaintiff that the fur package had been lost.

Subsequently, on June 1, 1957, American issued to plaintiff a standard form of the "Furriers' Block Policy," which came into general use in the insurance industry in August, 1956. The provisions of the policy include the following:

"2. Property Covered—On stock in trade consisting principally of furs, fur garments, garments trimmed with fur and accessories pertaining thereto, the property of the Assured or sold but not delivered, and the property of others who are dealers in such property or otherwise engaged in the trade for which the Assured may be liable, including the Assured's interest in such property for labor performed and materials expended thereon, hereinafter referred to as 'property.'
". . .

"5. Property in custody of public or common carriers or postal authorities is not covered unless shipped subject to the following conditions:

". . .

"C. Air freight by (1) Civil Aeronautics Board certified scheduled air carriers, including while in the custody of agents of such air carriers, or (2) air freight forwarders; provided that on each shipping package sent by the Assured, his officers, agents, servants or employees, a value declaration is made to the carrier or freight forwarder of not less than 25% of the actual value of the contents of the shipping package, but not necessarily more than $1,000 per package."

On July 2, 1957, plaintiff asserted its claim for the lost furs against the air freight forwarder, "Wings & Wheels," and was paid $250 by check, which was sent to George Bloom. Plaintiff then made claim against American for the value of the furs less the $250 received from the air freight forwarder. Defendant denied liability, asserting that plaintiff had no policy coverage for the loss, because Bloom, the New York fur buyer, as plaintiff's agent when shipping the furs by an "air freight forwarder," failed to make a proper declaration of the value of the furs.

The principal question is Bloom's legal status in the transaction. Plaintiff denies that Bloom was its agent at the time of the fur shipment and contends that he was acting as an independent contractor. If Bloom was not plaintiff's agent, it is implicit that the furs were covered by the policy. If the fur package was sent by Bloom as the "agent" of plaintiff, a proper value declaration was a positive act required to be performed before defendant's insurance policy became effective and covered the fur shipment. American Ins.

100

Co. v. Rosenberg, 28 Ill App2d 357, 171 NE2d 662 (1960).

The record shows that New York City is the center of the United States fur market. Retail furriers throughout the country, including plaintiff, purchase most of their furs in New York, either directly or through New York fur buyers.

Plaintiff, about 15 years ago, entered into a continuing agreement with George Bloom, a New York fur buyer, whereby plaintiff paid Bloom a monthly fee of $400, plus incidental expenses in servicing plaintiff's account, in return for Bloom's keeping plaintiff apprised of the fur market, making selections when requested, and having them shipped to plaintiff on approval. Plaintiff withheld no income taxes from Bloom's fee, paid no social security taxes for him, paid no part of Bloom's office rent, secretarial expenses or other office expenses, such as light, heat or telephone, and "had no right to tell Bloom how to run his business." Bloom "worked for approximately ten other furriers" throughout the country.

When furs were selected by Bloom, they were sent by the local New York fur dealer to Bloom's office but invoiced directly to plaintiff. Bloom examined the furs in his office and then shipped them to plaintiff in Chicago. On cross-examination, one of the partners of plaintiff testified, among other things: "It is customary that the buyer or the purchaser of the merchandise pays the freight charge. We paid the freight charge in the particular instance here. . . . We instructed Mr. Bloom to ship air freight whenever possible. When a shipment leaves the furrier in New York to go to Chicago it is on an invoice to Hoffman & Morton. . . . It was my understanding that we could merely terminate our relationship with Mr. Bloom at any time. . . . If he did not ship merchandise to us in the manner that we directed, he would not have

been doing his job. The time that he spent in transshipment of this merchandise and the time he spent in arranging for shipment by air express was time that he devoted to us."

Plaintiff contends that under the undisputed evidence, as a matter of law, George Bloom was an independent contractor, and cites authorities, which we have examined. In support of this contention, plaintiff argues that Bloom contracted for a stipulated price to accomplish something for plaintiff, and plaintiff reserved no direction over the conduct of Bloom's work. Plaintiff emphasizes that Bloom "shopped the market" where he chose, worked for ten other furriers throughout the country, used his discretion in determining how much time to devote to plaintiff's needs, used his own judgment in selecting furs, had his own office, hired his own employees, and paid his own business expenses.

We do not believe the foregoing facts to be determinative of the question before us, nor are we persuaded by the cases cited, where the issue is an alleged agent's power to make his principal liable to third parties in tort or contract.

■■ The distinguishing characteristic of an agent is that he represents another contractually. When properly authorized, he makes contracts or other negotiations of a business nature on behalf of his principal, by which his principal is bound. (Mechem, Outlines of the Law of Agency, 1952 Ed, p 4.) An agent is generally defined by the Illinois courts as being one who undertakes to manage some affairs to be transacted for another by his authority, on account of the latter, who is called the "principal," and to render an account. Dean v. Ketter, 328 Ill App 206, 210, 65 NE2d 572 (1946).

■ A person may be both an independent contractor and an agent for another. Thus, an attorney at law, a broker, an auctioneer, and other similar persons

employed either for a single transaction or for a series of transactions, are agents, although as to their physical activities they are independent contractors. All of them have the power to act for and to bind the principal in business negotiations within the scope of their agency, as in the instant case. Restatement of Agency, 2d Ed, 1958, p 12.

■ ■ It is undisputed that Bloom selected the furs in question, on specific directions from plaintiff, authorized their invoice to plaintiff, and made the shipment in accordance with plaintiff's general instructions to ship by air freight "whenever possible." Bloom had the power to make plaintiff a party to certain business transactions. Plaintiff paid the freight charge on shipments made by Bloom and did so in the instant case. Upon receiving a shipment on approval, plaintiff undertook a contractual obligation to the seller to pay for the furs or return them. We believe these facts are sufficient, as a matter of law, to hold that Bloom was the agent of plaintiff for the purchase and shipment of the lost furs. Therefore, when Bloom shipped the furs, a proper "value declaration" was required before defendant's insurance policy covered the furs then shipped.

■ Another contention, strenuously urged by plaintiff as a ground for defendant's liability, is that defendant is estopped from asserting noncompliance with the value declaration provision of the policy, by the circumstances under which the policy was issued.

Plaintiff's prior "Furriers' Block" policies were negotiated for plaintiff by Mrs. Hirsch, its insurance broker for 20 years, through Lange & Company, defendant's general agent, and were issued by companies other than American. These prior policies did not contain the 25% declaration of value provisions, here asserted as a defense to the action. In the instant case, the evidence shows that plaintiff dealt directly with Lange & Company in purchasing the American

policy in question, and the negotiations for it were conducted without Mrs. Hirsch actively participating. It is undisputed that plaintiff was not informed by either Mrs. Hirsch or Lange & Company of the 25% declaration of value provision at the time the oral binder became effective, or that plaintiff had no knowledge of the 25% declaration of value provision until 10 days after the loss had taken place.

Plaintiff argues that Lange & Company's knowledge of the variance between the terms of plaintiff's former policies and the one in question is imputed to defendant, and thus defendant is estopped to rely upon the value declaration provision.

██ Knowledge acquired by an insurer's general agent as to facts material to the insurance risk, acquired within the scope of the agent's duties, has been imputed to the insurer. (16 Appleman, Insurance Law and Practice, § 9103, p 641 (1944); Hartford Acc. & Indemn. Co. v. Northwest Nat'l Bank, 228 F2d 391, 397 (1955); Reinhardt v. Security Ins. Co. of New Haven, Conn., 321 Ill App 324, 331, 53 NE2d 13 (1943).) Where knowledge of such facts has been imputed to the insurer, it has been held that the insurer is estopped from asserting such facts in defense to a suit on the policy. St. Paul Fire & Marine Ins. Co. v. Wells, 89 Ill 82, 84 (1878); Abrahamson v. Hartford Fire Ins. Co., 181 Ill App 254, 256 (1913); Scott v. Bankers' Auto Ins. Co., 224 Ill App 606, 610 (1922).

The cases in which this rule has been applied show that the agent had actual knowledge of the material facts affecting the coverage of the policy and, either by statement or action, indicated to the assured that he was covered by the policy despite the agent's knowledge of the existence of material facts excluding coverage. There is no evidence in this record that Lange & Company was aware of plaintiff's or Bloom's practice in making value declarations, or aware of any facts material to the insurance risk.

■ The policy of plaintiff with American was not a renewal policy but was a new policy, issued by a new insurer, with whom plaintiff had not previously done business, and the exigencies of plaintiff's business delayed the issuance of the written policy. In a preliminary insurance contract, an oral binder, it will be presumed that the parties contemplated such form of policy, containing such conditions and limitations as are usual in such cases or have been used before between the parties. (Cottingham v. National Mut. Church Ins. Co., 290 Ill 26, 33, 125 NE 822 (1919).) The rule that the parties to a renewal policy contemplate the same terms and conditions as in the prior policy does not apply here. Palmer v. Bull Dog Auto Ins. Ass'n, 294 Ill 287, 128 NE 499 (1920).

We believe the doctrine of estoppel is not applicable here. There are no facts to support it. Moreover, its application would result in the reformation of defendant's policy to conform with plaintiff's understanding of prior policies, which plaintiff did not purchase from defendant, and would grant plaintiff more coverage than it purchased.

As we have come to the conclusion that, as a matter of law, Bloom was the agent of plaintiff in shipping the lost furs, and that the circumstances under which the policy was issued do not estop defendant from asserting the defense of noncompliance with the value declaration requirement of the policy, it is our opinion that the trial court was in error, as a matter of law, in not granting defendant's motion for a directed verdict instead of directing a verdict and entering judgment on it for plaintiff.

For the reasons stated the judgment appealed from is reversed, and judgment is entered here for defendant.

Reversed and judgment here.

BURMAN and ENGLISH, JJ., concur.