Docket No. 89351–Agenda 31–September 2000.

TEM HORWITZ 
et al
., Appellees, v. HOLABIRD & ROOT 
et al
., Appellants.

Opinion Filed May 20, 2004.

JUSTICE KILBRIDE delivered the opinion of the court:

Plaintiffs, Tem Horwitz and Horwitz Matthews, Inc. (collectively, Horwitz Matthews), filed a six-count complaint in the circuit court of Cook County against the law firm of Sabo & Zahn (the firm) and its clients, defendants Holabird & Root, Jeffrey Case, Gerald Horn, and James Baird (collectively, Holabird & Root), alleging, 
inter alia
, tortious interference with business relationships. Sabo & Zahn is not involved in this appeal, and only count VI is at issue here. Count VI sought relief against Holabird & Root as a principal who acted by and through its attorneys, Sabo & Zahn.

The trial court granted summary judgment in favor of Holabird & Root, ruling as a matter of law that Holabird & Root could not be liable for its attorneys’ actions. Horwitz Matthews appealed and the appellate court reversed and remanded, with one justice dissenting. 312 Ill. App. 3d 192. We granted Holabird & Root’s petition for leave to appeal. 177 Ill. 2d R. 315. We now must decide whether, and if so when, a client may be held vicariously liable for an attorney’s allegedly intentional tortious conduct.

BACKGROUND

Holabird & Root is a general partnership in the architectural business. Case, Horn, and Baird are its partners. Holabird & Root retained Sabo & Zahn to collect a debt incurred by Horwitz Matthews for architectural services. Horwitz Matthews is an Illinois corporation that develops real estate with private investors. In the course of representing Holabird & Root, Sabo & Zahn obtained a judgment against Horwitz Matthews.

In response to a citation to discover assets, Horwitz Mathews provided Sabo & Zahn with various tax returns. According to uncontradicted deposition testimony, this tax information was the subject of a confidentiality agreement. Specifically, Sabo & Zahn agreed not to disclose the tax information to anyone outside its law firm. Through discovery, Sabo & Zahn also learned the identity of several business associates and investors of Horwitz Matthews. Sabo & Zahn contacted at least 40 of these business associates and investors by letter, informing them that on its tax returns Horwitz Matthews had apportioned itself a greater percentage than it was entitled of the partnership business. The letters also stated that the partnership’s tax filing showed the investors’ share of the loss was underreported. The letters were on the firm’s stationery and stated, “we represent Holabird & Root who have a judgment against Horwitz Matthews.”

Horwitz Matthews filed a six-count complaint against Sabo & Zahn and Holabird & Root. The trial court dismissed counts I through IV, sounding in defamation and levied at both Sabo & Zahn and Holabird & Root. Count V sought relief solely against Sabo & Zahn. Count VI sought relief for tortious interference with business relationships solely against Holabird & Root as a principal acting by and through its attorneys, Sabo & Zahn.

The trial court granted Holabird & Root’s subsequent motion for summary judgment on count VI and ruled as a matter of law that Holabird & Root could not be held liable for its attorneys’ actions. Horwitz Matthews appealed. In reversing the grant of summary judgment in favor of Holabird & Root, the appellate court held that the attorney-client relationship in this case was one governed by the laws of agency with Holabird & Root as the principal and Sabo & Zahn as the agent. 312 Ill. App. 3d at 195-96. The appellate court reasoned that, although attorneys are independent contractors of their clients regarding their physical activities (
Washington v. Caseyville Health Care Ass’n
, 284 Ill. App. 3d 97, 101 (1996)), there were no allegations of “any physical activities undertaken by Sabo & Zahn; therefore, [Sabo & Zahn] would not be an independent contractor in its relationship with the Holabird & Root defendants.” 312 Ill. App. 3d at 196. According to the appellate court, Sabo & Zahn’s misconduct could be attributed to Holabird & Root under the law of agency, binding principals by their chosen agents’ deeds. 312 Ill. App. 3d at 195-96; see 
Diersen v. Chicago Car Exchange
, 110 F.3d 481 (7th Cir. 1997).

The appellate court also found that a genuine issue of material fact existed concerning whether Sabo & Zahn acted within the scope of its authority in sending the letters to the various business partners of Holabird & Root. 312 Ill. App. 3d at 196-97. In support of this conclusion, the appellate court relied on the discovery depositions of Werner Sabo and James Zahn. Each stated that the firm was performing a task it had been hired to accomplish. The appellate court also relied on defendant James W. Baird’s discovery deposition statement that the letters sent by Sabo & Zahn indicated to him that the law firm was pursuing the fee in an “aggressive way” and that the firm was “serving them as their clients.”

Finally, the appellate court held that a genuine issue of material fact existed as to whether Holabird & Root ratified Sabo & Zahn’s misconduct. According to the appellate court,

“It is not clear from the record when the Holabird & Root defendants became aware of the letters, and when they did, if they ever disapproved of the letters being mailed or if by their silence and conduct they approved the letters. Whether the Holabird & Root defendants’ actions or lack thereof constituted a ratification is a question of fact.” 312 Ill. App. 3d at 197.

Given the appellate court’s opinion that there were genuine issues of material fact, the appellate court remanded the cause for further proceedings.

In dissent, Presiding Justice Hoffman stated that the decision was flawed. 312 Ill. App. 3d at 198 (Hoffman, P.J., dissenting). The dissent concluded that, in cases involving an attorney pursuing a claim without further direction, the attorney should be held to be an independent contractor. 312 Ill. App. 3d at 198-99 (Hoffman, P.J., dissenting). According to the dissent, since Sabo & Zahn was an independent contractor, Holabird & Root could not be held vicariously liable for its allegedly tortious conduct. The dissent reasoned that there was no vicarious liability primarily because an employer has no “right to control the manner of doing the work” performed by the independent contractor. See 
Hartley v. Red Ball Transit Co.
, 344 Ill. 534, 538-39 (1931).

According to the dissent, even if Sabo & Zahn is deemed to be Holabird & Root’s agent, summary judgment was appropriately granted to Holabird & Root because Sabo & Zahn acted outside the scope of its authority. 312 Ill. App. 3d at 199 (Hoffman, P.J., dissenting). The dissent reasoned:

“[T]he general retention of an attorney to do all things necessary to pursue a claim should, as a matter of law, be interpreted as authorizing the attorney only to do all things legal and proper to pursue the claim and should not be construed, without more, as giving the attorney direction or permission to commit a tortious act. Where there is no evidence that the client expressly or impliedly authorized, directed, knew of, or ratified the alleged tortious conduct of its attorney, it should not be presumed that, merely because the parties stand in the relationship of attorney-client, the client intended or authorized the tortious conduct or that the conduct was within the scope of the attorney’s duties.” 312 Ill. App. 3d at 199-200 (Hoffman, P.J., dissenting).

Concerning the propriety of summary judgment, the dissent further stated:

“In this case, there is no evidence that the alleged tortious content of the letters sent to the business associates and investors of Horwitz Matthews was ordered or directed by Holabird & Root, nor do I believe that there is any evidentiary material in the record that creates a genuine issue of fact on the question of whether the Holabird & Root defendants knew of the contents of the letters before they were sent by Sabo & Zahn. [Jeffrey] Case and [James] Baird, both Holabird & Root partners, denied seeing the letters before they were sent. Their testimony constitutes the only competent evidentiary material of record on the issue since, as the appellate court points out, the most that Sabo & Zahn is able to say is that no one at the firm can recall whether the letters were shown to anyone at Holabird & Root before they were sent.” 312 Ill. App. 3d at 199 (Hoffman, P.J., dissenting).

Holabird & Root now appeals.

ANALYSIS

Summary judgment is appropriate when “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 735 ILCS 5/2–1005(c) (West 2000); 
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 517-18 (1993). Summary judgment should not be granted unless the right of the moving party is clear and free from doubt. 
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986). While the nonmoving party in a summary judgment motion is not required to prove his or her case, the nonmovant must present a factual basis arguably entitling that party to a judgment.
 Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 517-18 (2000). We review 
de novo
 all cases involving summary judgment. 
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).

Holabird & Root’s arguments on appeal essentially follow the reasoning expressed in Presiding Justice Hoffman’s dissent. Initially, Holabird & Root maintains that the specific factual situation in this case is one of first impression for this court. Accordingly, Holabird & Root contends that the cases cited by Horwitz Matthews and the appellate court are inapposite and do not control the disposition.

As we stated in 
Gomien v. Wear-Ever Aluminum, Inc.
, 50 Ill. 2d 19 (1971):

“Generally, it is the law that a master is liable for the acts of his servant committed within the scope of his employment; that a principal is liable for the acts of his agent performed within the scope of the agency; but neither is liable for the acts of an independent contractor unless the act or omission causing harm was pursuant to the order or direction of the principal or employer, or unless under certain circumstances, the principal or employer failed to exercise reasonable care in selecting a careful and competent contractor.”
 Gomien
, 50 Ill. 2d at 21.

In the attorney-client relationship, clients are generally bound by their attorneys’ acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys’ authority. See, 
e.g.
, 
Webster v. Hartman
, 195 Ill. 2d 426, 433 n.1 (2001) (“this court has long held that counsel must possess express consent or authorization to compromise or settle a case”). Moreover, the attorney-client relationship is a fiduciary relationship. See, 
e.g.
, 
In re Imming
, 131 Ill. 2d 239, 252-53 (1989); 
In re Schuyler
, 91 Ill. 2d 6, 11 (1982). As fiduciaries, attorneys owe to their clients “the basic obligations of agency: loyalty and obedience.” Restatement (Second) of Agency §14N, Comment 
a
, at 80 (1958). Nonetheless, this case does not involve an attorney’s duty to a client, but rather an attorney’s duty to a third party. Thus, Holabird & Root has accurately pointed out that there is no Illinois decision addressing whether clients may be held liable for their attorneys’ alleged intentional torts against a third party undertaken without the direction or knowledge of the client.

In 
Flight Kitchen, Inc. v. Chicago Seven-Up Bottling Co.
, 22 Ill. App. 3d 558 (1974), heavily relied upon by Horwitz Mathews, the plaintiff filed an action to recover damages allegedly suffered by reason of an averred trespass to its property by the defendant’s attorney. In enforcing a judgment rendered on behalf of the plaintiff against a third party, the attorney wrongfully directed the sheriff to levy against the property of an innocent third party. The client was fully aware of the levy against the wrong party. In fact, the client executed a bond to institute the levy proceeding. Thus, the misconduct engaged in by the attorney was committed with the full knowledge and direction of the client.
 Flight Kitchen
, 22 Ill. App. 3d at 563. That is not the case here. A factual scenario more clearly on point was presented in a case cited by Holabird & Root, 
In re Berry Publishing Services, Inc.
, 231 B.R. 676 (Bankr. N.D. Ill. 1999).

In 
Berry
, a party attempted to purchase a bankruptcy debtor’s interest in certain assets at a court-approved sale. The purchaser later commenced a cause of action against the bankruptcy trustee and the trustee’s attorney, alleging tortious interference with the purchaser’s contracts or prospective business relationships. The claims stemmed from a letter sent by the trustee’s attorney without the knowledge of the trustee to several of the purchaser’s clients, opining that the purchaser had not actually acquired the assets at issue. In addition to recovery against the trustee’s attorney, the purchaser also sought recovery against the trustee premised upon an agency law theory of vicarious liability. The bankruptcy court held that the purchaser could not recover from the trustee on such a theory. 
Berry
, 231 B.R. at 682.

Applying Illinois law, the court held that a principal is not liable for an agent’s torts, provided the agent is not an employee of the principal. 
Berry
, 231 B.R. at 682, citing 
Anderson v. Marathon Petroleum Co.
, 801 F.2d 936, 938 (7th Cir. 1986), citing
 Gomien
, 50 Ill. 2d at 21. According to the 
Berry
 court, although the attorney-client relationship is governed by agency principles, the attorney is considered a classic independent contractor. 
Berry
, 231 B.R. at 682, citing 
Hoffman & Morton Co. v. American Insurance Co.
, 35 Ill. App. 2d 97, 102-03 (1962). The 
Berry
 court specifically relied on the following passage of the Seventh Circuit’s opinion in 
Anderson
:

“ ‘The reason for distinguishing the independent contractor from the employee is that, by definition of the relationship between a principal and an independent contractor, the principal does not supervise the details of the independent contractor’s work and therefore is not in a good position to prevent negligent performance, whereas the essence of the contractual relationship known as employment is that the employee surrenders to the employer the right to direct the details of his work, in exchange for receiving a wage. The independent contractor commits himself to providing a specified output, and the principal monitors the contractor’s performance not by monitoring inputs–
i.e.
, supervising the contractor–but by inspecting the contractually specified output to make sure it conforms to the specifications.’ ” 
Berry
, 231 B.R. at 682, quoting 
Anderson
, 801 F.2d at 938.

The 
Berry
 court concluded that there was no authority to depart from this rule in cases concerning an attorney-client relationship. 
Berry
, 231 B.R. at 681.

The courts of our sister states are, however, divided on the issue of imposing vicarious liability for the actions of attorneys. In some jurisdictions, the courts find no vicarious liability. See 
Baldasarre v. Butler
, 132 N.J. 278, 625 A.2d 458 (1993) (an innocent client should not be held vicariously liable for the wrongful conduct of his or her attorney if the client does not direct, advise, consent to or participate in the attorney’s improper conduct); 
Lynn v. Superior Court
, 180 Cal. App. 3d 346, 225 Cal. Rptr. 427 (1986);
 Plant v. Trust Co. of Columbus
, 168 Ga. App. 909, 310 S.E.2d 745 (1983); see also 
Aetna Casualty & Surety Co. v. Protective National Insurance Co.
, 631 So. 2d 305 (Fla. App. 1993) (an insurance company is not vicariously liable for the malpractice of the attorney it selects to defend the insured);
 Brown v. Lumbermens Mutual Casualty Co.
, 90 N.C. App. 464, 369 S.E.2d 367 (1988), 
aff’d
, 326 N.C. 387, 390 S.E.2d 150 (1990) (since attorneys employed by insurance company were independent contractors, their negligence, was not imputable to insurance company);
 Feliberty v. Damon
, 72 N.Y.2d 112, 120, 527 N.E.2d 261, 265, 531 N.Y.S.2d 778, 782 (1988) (vicarious liability produces an untenable result where on the one hand a party is prohibited from conducting the litigation or controlling the decisions of the attorney and on the other hand that party is charged with responsibility for the lawyer’s day-to-day independent professional judgments). Other jurisdictions impose vicariously liability, holding the attorney-client relationship is a principal-agent relationship. See 
Stumpf v. Continental Casualty Co.
, 102 Or. App. 302, 794 P.2d 1228 (1990); 
Southwestern Bell Telephone Co. v. Wilson
, 768 S.W.2d 755 (Tex. Ct. App. 1988) (but see 
Bradt v. West
, 892 S.W.2d 56, 76-77 (Tex. Ct. App. 1994) (client not automatically liable for tortious conduct of attorney)); 
Peterson v. Worthen Bank & Trust Co., N.A.
, 296 Ark. 201, 753 S.W.2d 278 (1988); 
United Farm Bureau Mutual Insurance Co. v. Groen
, 486 N.E.2d 571 (Ind. App. 1985); 
Continental Insurance Co. v. Bayless & Roberts, Inc.
, 608 P.2d 281 (Alaska 1980); 
Nyer v. Carter
, 367 A.2d 1375 (Me. 1977).

After careful consideration of this conflicting authority, we conclude that when, as here, an attorney acts pursuant to the exercise of independent professional judgment, he or she acts presumptively as an independent contractor whose intentional misconduct may generally not be imputed to the client, subject to factual exceptions. See 
Lynn
, 180 Cal. App. 3d at 348-49, 225 Cal. Rptr. at 429. Individuals more often than not seek the assistance of an attorney because they are unfamiliar with the law and unable to perform the work themselves. See slip op. at 25 (McMorrow, C.J., dissenting, joined by Garman, J.). Therefore, an attorney usually pursues a client’s legal rights without specific direction from the client, using independent professional judgment to determine the manner and form of the work.

An independent contractor is defined by the level of control over the manner of work performance. 
Hartley v. Red Ball Transit Co.
, 344 Ill. 534, 539 (1931).

“An independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified *** [and] without his being subject to the orders of the [person for whom the work is done] in respect to the details of the work.” 
Hartley
, 344 Ill. at 539.

That someone is an independent contractor does not bar the attachment of vicarious liability for her actions if she is also an agent. See 
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 31 (1999) (“[a]s a general rule, no vicarious liability exists for the actions of independent contractors. Vicarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established”). A person may be both an independent contractor and an agent with the authority both to control the details of the work and also “the power to act for and to bind the principal in business negotiations within the scope of [the] agency.” See 
Hoffman & Morton Co. v. American Insurance Co.
, 35 Ill. App. 2d 97, 103 (1962). As a general rule, attorneys fit squarely within this category. Nonetheless, when attorneys act pursuant to the exercise of independent professional judgment, they possess such considerable autonomy over the details and manner of performing their work that they are presumptively independent contractors for purposes of imposing vicarious liability. Accordingly, where a plaintiff seeks to hold a client vicariously liable for the attorney’s allegedly intentional tortious conduct, a plaintiff must prove facts demonstrating either that the client specifically directed, controlled, or authorized the attorney’s precise method of performing the work or that the client subsequently ratified acts performed in the exercise of the attorney’s independent judgment. If there is no evidence that the client directed, controlled, authorized, or ratified the attorney’s allegedly tortious conduct, no vicarious liability can attach.

Here, the record contains no evidence that the content of the allegedly tortious letters was directed, controlled, or authorized by Holabird & Root. Nor is there any evidentiary material in the record creating a genuine issue of fact on the question of whether Holabird & Root knew of the contents of the letters before they were sent by Sabo & Zahn. The evidence deposition testimony relied on by the appellate court does not raise a question concerning this issue. That Sabo & Zahn believed that the firm was performing the task it had been hired to accomplish does not address the issue of whether Holabird & Root knew of the letters or the letters’ content. Similarly, James W. Baird’s statements that the letters indicated that the law firm was pursuing the fee in an “aggressive way” and that the firm was “serving them as their clients” does not contradict his testimony that he was unaware of the letters until after the letters were sent. The only evidence in the record concerning the contents of the letters is deposition testimony indicating that Sabo & Zahn agreed not to disclose the tax information to anyone outside its law firm. Accordingly, there was no question of fact raised as to whether Holabird & Root authorized, directed, or controlled the content of the letters.

Turning to the parties’ final argument, ratification of an unauthorized act is tantamount to an original authorization and confirms what was originally unauthorized. 
Jones v. Beker
, 260 Ill. App. 3d 481, 485 (1994). The principle behind the doctrine of ratification is that the person ratifying secures a benefit through the actions of another who is acting on his behalf with apparent or implied authority. 
Swader v. Golden Rule Insurance Co.
, 203 Ill. App. 3d 697, 704-05 (1990). If there is no benefit, ratification will not be implied. 
Jones
, 260 Ill. App. 3d at 485; see also 
Stathis v. Geldermann, Inc.
, 295 Ill. App. 3d 844, 858 (1998) (ratification may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction). The record in this case is devoid of any suggestion that could support an inference Holabird & Root benefitted in any way from Sabo & Zahn’s alleged interference with the business relationships of Horwitz Matthews. Without a question of fact concerning whether Holabird & Root derived a benefit from the allegedly tortious letters, there could be no ratification and summary judgment was appropriately granted to Holabird & Root.

In rendering our holding, we acknowledge that attorneys remain bound by strong ethical obligations to their clients and that the attorney-client relationship is fiduciary in nature. As a fiduciary relationship, there are a myriad of circumstances where attorneys act as agents for their clients. The situation at hand is simply not one of them. We further acknowledge that our holding conflicts with the comment following section 253 of the Restatement of Agency:

“The principal is liable [for its agent’s conduct] only if [that] conduct *** is, in part at least, to carry out the purposes of the principal. The situation most frequently aris[es] *** [when] an attorney at law tortiously institutes or continues civil or criminal proceedings, or is guilty of oppressive or wrongful conduct during the course of the proceedings, in order that he may enforce a claim of the principal. The fact that the attorney is subject to discipline by the court does not prevent the client from being liable for his conduct.” Restatement (Second) of Agency §253, Comment 
a
 (1958).

We disagree with the Restatement’s discounting that attorneys are constrained by certain court-imposed ethical considerations that serve to distance their behavior from their clients. Attorneys cannot blindly follow their clients’ directions, even if those directions are particular and express, if doing so would require them to violate their ethical obligations. See 134 Ill. 2d R. 1.1 
et
 
seq.
 (Illinois Rules of Professional Conduct). In representing a client, Rule 2.1 mandates that a lawyer exercise independent professional judgment. 134 Ill. 2d R. 2.1. The rules of legal ethics are aimed at protecting the attorney-client relationship, maintaining public confidence in the legal profession, and ensuring the integrity of judicial proceedings. 
SK Handtool Corp. v. Dresser Industries, Inc.
, 246 Ill. App. 3d 979, 989 (1993). A lawyer is prohibited under Rule 1.2(f) from acting on behalf of a client in any manner that serves merely to harass or maliciously injure another. 134 Ill. 2d R. 1.2(f). An intentional tort as alleged here would arguably fall within the parameters of the type of behavior prohibited by Rule 1.2(f). Further, Rule 1.2(i) provides that “[w]hen a lawyer knows that a client expects assistance not permitted by these Rules or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer’s conduct.” 134 Ill. 2d R. 1.2(i). Similarly, Rule 1.16(a)(1) states that a lawyer representing a client before a tribunal shall withdraw from employment if: “(1) the lawyer knows or reasonably should know that the client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person.” 134 Ill. 2d R. 1.16(a)(1).

The preamble to the Rules of Professional Conduct likewise emphasizes the weighty obligations attorneys undertake in the practice of law:

“The practice of law is a public trust. Lawyers are the trustees of the system by which citizens resolve disputes among themselves, punish and deter crime, and determine their relative rights and responsibilities toward each other and their government. Lawyers therefore are responsible for *** maintaining public confidence in the system of justice by acting competently and with loyalty to the best interests of their clients; by working to improve that system to meet the challenges of a rapidly changing society; and by defending the integrity of the judicial system against those who would corrupt, abuse or defraud it.” 134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 470.

Were we to hold otherwise, we would in effect compel clients in similar cases to oversee or micromanage every action taken by their attorneys during the course of the attorney-client relationship, and obligate clients to take control of their representation at the slightest hint of potentially wrongful conduct on the part of their attorneys. See 
Bradt v. West
, 892 S.W.2d 56, 76-77 (Tex. Ct. App. 1994); see also slip op. at 31 (McMorrow, C.J., dissenting, joined by Garman, J.). Such close monitoring would be impossible for most clients. See 
Bradt
, 892 S.W.2d at 76-77; see also slip op. at 30 (McMorrow, C.J., dissenting, joined by Garman, J.). Moreover, most clients are not qualified to undertake that type of monitoring. See 
Link v. Wabash R.R. Co.
, 370 U.S. 626, 647, 8 L. Ed. 2d 734, 747, 82 S. Ct. 1386, 1397 (1962) (Black, J., dissenting, joined by Warren, C.J.) (it cannot be said that there is a duty for a client to try to supervise the daily professional services of the attorney); see also slip op. at 30 (McMorrow, C.J., dissenting, joined by Garman, J.). The obligation to supervise an attorneys’ conduct would make plaintiffs reluctant to file suit and make defendants hesitant to defend themselves vigorously. See 
Bradt v. West
, 892 S.W.2d 56, 76-77 (Tex. Ct. App. 1994); see also slip op. at 30-31 (McMorrow, C.J., dissenting, joined by Garman, J.). This would not only chill the willingness of Illinois citizens to vindicate their legal rights, “it would make them ultimately responsible for their own legal representation–the very act for which they hire an attorney in the first place.”
 Bradt
, 892 S.W.2d at 76-77; see also slip op. at 31 (McMorrow, C.J., dissenting, joined by Garman, J.).

Given our holding that Sabo & Zahn was acting as an independent contractor of Holabird & Root, and not an agent, when it sent the allegedly tortious letters, we need not address the parties’ arguments concerning whether Sabo & Zahn acted outside the scope of its authority because an employer has no right to control the manner of performance used by an independent contractor. See 
Hartley v. Red Ball Transit Co.
, 344 Ill. 534, 538-39 (1931).

The misunderstanding of this opinion apparent in both dissents prompts us to respond to several issues. First, Justice Freeman’s dissent is based on the errant notion that, because an individual may be both an independent contractor and an agent, an attorney is at all times both. Second, according to Justice Freeman’s dissent, 
Petrovich
 overruled 
Gomien
. The dissent is wrong on both counts. In 
Petrovich
, a patient who was a member of a health maintenance organization (HMO) sued the HMO for medical malpractice, alleging that the HMO was vicariously liable for the conduct of the participating physician who had treated her. The trial court granted summary judgment to the HMO and the patient appealed. The appellate court reversed and remanded. 
Petrovich
 
v. Share Health Plan of Illinois, Inc.
, 296 Ill. App. 3d 849 (1998). This court affirmed, holding that an HMO may be held vicariously liable for the negligence of its independent contractor physicians under the doctrines of apparent authority and implied authority. 
Petrovich
, 188 Ill. 2d at 31-52. In order for vicarious liability to attach for an independent contractor’s actions in such situations, there must either be: (1) a “holding out,” meaning that the HMO, or its agent, acted in a manner that would lead a reasonable person to conclude that the physician who was alleged to be negligent was an agent or employee of the HMO (
Petrovich
, 188 Ill. 2d at 34); or (2) facts and circumstances showing that the defendant exerted sufficient control over the alleged agent so as to negate that person’s status as an independent contractor (
Petrovich
, 188 Ill. 2d at 42). Neither theory to overcome independent contractor status was raised by the plaintiffs before this court or before the trial court. Therefore, 
Petrovich
 is of no avail to plaintiffs here. Moreover, contrary to the dissent’s assertion, 
Gomien
 remains good law. Unless 
Petrovich
 is satisfied, there is, generally, no vicarious liability for an independent contractor’s actions.

Third, Justice Freeman’s invocation of 
Rankin v. Heidlebaugh
, 321 Ill. App. 3d 255, 266-67 (2001), is likewise ineffective. 
Rankin
 involved the potential vicarious liability of an organization, Equip for Equality (EFE), for the actions of one of its attorney employees and had absolutely nothing to do with the potential vicarious liability of a client for the conduct of retained counsel. Fourth, the other Illinois cases cited in Justice Freeman’s dissent do not run counter to our opinion. For example, as discussed previously, 
Flight Kitchen
 involved misconduct engaged in by an attorney with the full knowledge and direction of the client.
 Flight Kitchen
, 22 Ill. App. 3d at 563. Moreover, in 
Woods v. Cole
, 181 Ill. 2d 512 (1998), 
Doyle v. Shlensky
, 120 Ill. App. 3d 807 (1983), and 
Danforth v. Checker Taxi Co.
, 114 Ill. App. 2d 471 (1969), vicarious liability for an attorney’s actions was not at issue.

Fifth, Justice Freeman’s dissent asserts that we rely too heavily on 
Berry
 because it was “wrongly decided,” contradicts 
Petrovich
, and relies on 
Anderson
, a case that has nothing to do with attorneys. We acknowledge that the 
Berry
 court’s statement, “a principal is not liable for an agents’ [
sic
] torts,” taken out of context, contradicts 
Petrovich
. That statement, however, was made in relation to a
 discussion distinguishing between an independent contractor and an employee for the purposes of imposing vicarious liability.

Sixth, Justice Freeman’s dissent expresses concern that several of the foreign jurisdiction cases that we have cited with approval are insurance cases. Unfortunately, it is often not possible to find factual scenarios directly on point when deciding a particular issue. In such cases, general propositions of law are often taken from factually similar cases and applied to the scenario at hand. That the dissenter frowns on this practice is of no consequence.

Finally, the misunderstanding of our holding apparent in Justice Freeman’s dissent can be most vividly seen in the statement that “the majority disavows basic black-letter principles of agency law when it holds that principals are not liable for their agents’ conduct within the scope and in the service of the agency.” Slip op. at 41 (Freeman, J., dissenting). We are not disavowing black-letter agency law. We acknowledge that principals are liable for their agents’ conduct within the scope and in the service of the agency. Irrespective of this principle, we hold that an attorney can be both an independent contractor and an agent, but regarding particular conduct is either one or the other, not both. Thus, there is no basis for the straw man “distinction” drawn by the dissent between a “normal agent” and an attorney. Slip op. at 42 (Freeman, J., dissenting). In the case at bar, plaintiffs failed to demonstrate that there was a genuine issue of material fact as to whether Sabo & Zahn was acting as the agent of Holabird & Root when it engaged in the allegedly tortious conduct. Accordingly, the trial court correctly determined that Holabird & Root was entitled to a judgment as a matter of law.

Additionally, Chief Justice McMorrow’s dissent is precariously close to agreeing with the majority opinion. Chief Justice McMorrow plainly agrees with our answer to the central question presented by this appeal: whether, and if so, to what extent, clients may be held vicariously liable for the intentional torts of their attorneys. Her dissent, like the majority opinion, answers that question in the affirmative, qualifying that answer in essentially the same manner as the majority: “In order to hold a client liable for the intentional torts of the client’s attorney, a plaintiff would be required to produce evidence that the client authorized, directed, had knowledge of or ratified the attorney’s misconduct.” Slip op. at 34 (McMorrow, C.J., dissenting, joined by Garman, J.). Moreover, we agree with Chief Justice McMorrow that it cannot be presumed an intentional tort as alleged here, or, for that matter, any other illegal or unethical act, lies within the scope of the attorney-client relationship. Slip op. at 34 (McMorrow, C.J., dissenting, joined by Garman, J.). We further agree that it should be presumed, as a matter of public policy, that clients hire attorneys to pursue legal remedies in a legal and ethical manner; and that, since attorneys stand in a fiduciary relationship to their clients and are officers of the court, clients are reasonably justified in expecting that their attorneys will represent them ethically and within the bounds of the law. Slip op. at 34 (McMorrow, C.J., dissenting, joined by Garman, J.).

Chief Justice McMorrow parts company with the majority by her agreement with Justice Freeman that an attorney is both an agent and an independent contractor at all times, even when the attorney allegedly commits an intentional tort and there is no proof that the client directed, controlled, authorized, or ratified the attorney’s conduct
. In order to avoid Justice Freeman’s conclusion that a client, in every instance, is vicariously liable for retained counsel’s intentionally tortious actions committed within the scope of the agency (see Restatement (Second) of Agency §216, Comment 
a
 (1958); accord 
Peddinghaus v. Peddinghaus
, 314 Ill. App. 3d 900, 904 (2000); 
Letsos v. Century 21–New West Realty
, 285 Ill. App. 3d 1056, 1069 (1996)), Chief Justice McMorrow distinguishes attorneys from all other types of agents and carves out an exception to the vicarious liability rule based on that distinction. While Chief Justice McMorrow’s position is not completely untenable, we believe that our opinion presents the more reasoned approach. Rather than fashion a wholesale exception to the agency rules for attorneys, we merely distinguish situations in the attorney-client relationship where, as here, vicarious liability is claimed by a third party for the alleged intentional tortious conduct of the attorney.

Moreover, contrary to Chief Justice McMorrow’s protestations, our holding in this case does not alter the core relationship between the attorney and client. Nor does it impact the ability of an attorney to bind his or her client in a traditional, representational context. See 
In re Marriage of Marr
, 264 Ill. App. 3d 932, 935 (1994) (“Generally, a client is bound by the acts or omissions of his attorney within the scope of the attorney’s authority”). We continue to affirm the long-standing principles of an attorney’s fiduciary obligations and ethical responsibilities to a client that exist at all times during the representational relationship. See
 Imming
, 131 Ill. 2d at 252; 
Schuyler
, 91 Ill. 2d at 11; see also 134 Ill. 2d R. 1.1 
et
 
seq.
 (Illinois Rules of Professional Conduct). Rather, this opinion must be understood as limited to the narrow scope of vicarious liability claims against a client based upon an attorney’s alleged intentional tortious conduct.

CONCLUSION

 For the above-stated reasons, we hold generally that attorneys may be both independent contractors and agents but, regarding specific conduct, are either one or the other. We further hold that for purposes of imposing vicarious liability for allegedly tortious conduct, when attorneys act pursuant to independent professional judgment, they are presumptively independent contractors whose alleged misconduct may not be imputed to their clients, unless it is shown that the client directed, controlled, authorized, or ratified the alleged misconduct. Since there was no genuine issue of material fact presented regarding whether Holabird & Root directed, controlled, authorized, or ratified the allegedly tortious conduct of Sabo & Zahn, we reverse the judgment of the appellate court and affirm the judgment of circuit court of Cook County granting summary judgment to Holabird & Root.

Appellate court judgment reversed;

circuit court judgment affirmed
.

CHIEF JUSTICE McMORROW, dissenting:

This appeal presents an important issue of first impression for this court: whether, and if so, to what extent, clients may be held vicariously liable for the intentional torts of their attorneys. The majority holds that attorneys are nonagent independent contractors whose intentional misconduct may not be imputed to the client, unless a plaintiff 
proves facts demonstrating either “that the client specifically directed, controlled, or authorized the attorney’s precise method of performing the work or that the client subsequently ratified acts performed in the exercise of the attorney’s independent judgment.” Slip op. at 9. Applying this rule to the facts before it, the majority also holds that the circuit court properly granted summary judgment to the client, Holabird & Root, finding that there was no evidence giving rise to a genuine issue of material fact as to whether Holabird & Root authorized, directed, had prior knowledge of, or ratified the allegedly tortious conduct of its attorneys, Sabo & Zahn.

I respectfully dissent from the opinion of the majority. It is my view that the appellate court below was correct in determining that an agency relationship exists between an attorney and client. It is also my position that the appellate court correctly held that, under the facts presented in this cause, summary judgment was improperly granted by the circuit court because there exists a genuine issue of material fact both with respect to whether Sabo & Zahn was acting within the scope of its authority when it engaged in the allegedly tortious conduct, and whether Holabird & Root subsequently ratified the conduct of Sabo & Zahn. I would arrive at this conclusion, however, somewhat differently than the appellate court below.

The central issue presented in this case reaches the core of the relationship between an attorney and a client: to what extent can an attorney bind his or her client for the actions taken by the attorney? In order to answer this question, it is necessary to briefly review basic principles of the law of agency, and the differences between an “agent” and an “independent contractor.” In general, an agency relationship is characterized by a fiduciary affiliation between two individuals in which the principal exercises some degree of control over the conduct of the agent, and the agent has the power to act on behalf of the principal. Restatement (Second) of Agency §1 (1958); see also 3 Am. Jur. 2d 
Agency
 §§1, 2 (1986). Section 2 of the Restatement (Second) of Agency defines an independent contractor as “a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other’s right to control with respect to his physical conduct in the performance of the undertaking.” Restatement (Second) of Agency §2(3) (1958). Notably, section 2 of the Restatement also provides that an independent contractor “may or may not be an agent.” Restatement (Second) of Agency §2(3) (1958). Thus, under the Restatement, the concept of an “independent contractor” and “agent” are not mutually exclusive. The comments to section 2 of the Restatement explain that, generally, an “agent who is not a servant is *** an independent contractor when he contracts to act on account of the principal.” Restatement (Second) of Agency §2, Comment 
b
, at 13 (1958). However, “not all independent contractors are agents.” Restatement (Second) of Agency §2, Comment 
b
, at 14 (1958). For example, “one who contracts for a stipulated price to build a house for another and who reserves no direction over the conduct of the work is an independent contractor; but he is not an agent, 
since he is not a fiduciary, has no power to make the one employing him a party to the transaction, and is subject to no control over his conduct.
” (Emphasis added.) Restatement (Second) of Agency §2, Comment 
b
, at 14 (1958).

Thus, a fundamental distinguishing characteristic between an agent and an independent contractor is that an agent stands in a fiduciary position with respect to the principal, whereas an independent contractor is not a fiduciary of the principal. “The agency relation results if, but only if, there is an understanding between the parties which *** creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts.” Restatement (Second) of Agency §1, Comment 
b
, at 9 (1958); see also Restatement (Second) of Agency §13, Comment 
b
, at 59 (1958) (“The fact that an agent is subject to *** fiduciary duties distinguishes him from other persons who have power to affect the interests of others; and the understanding that one is to act primarily for the benefit of another is often the determinative feature in distinguishing the agency relation from other relations”).

Section 14N of the Restatement (Second) of Agency more clearly states the concept that an individual may be characterized as 
both
 an agent and an independent contractor. This section provides that “[o]ne who contracts to act on behalf of another and subject to the other’s control except with respect to his physical conduct is an agent and also an independent contractor.” Restatement (Second) of Agency §14N (1958). Particularly relevant to the matter before us, the comment to section 14N discusses the dual roles that an attorney plays during the representation of a client. Comment 
a
 to section 14N explains that “most of the persons known as agents, that is *** 
attorneys
 *** are independent contractors as that term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services.” (Emphasis added.) Restatement (Second) of Agency §14N, Comment 
a
, at 80 (1958). The comment goes on to explain that, even though attorneys may be considered independent contractors, they nevertheless also “fall within the category of agents,” because “[t]hey are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience.” Restatement (Second) of Agency §14N, Comment 
a
, at 80 (1958).

Whether an attorney is characterized as an agent or an independent contractor affects the vicarious liability of the client for the attorney’s conduct. A principal is liable for the acts of an agent committed within the scope of the agent’s authority. 
Brubakken v. Morrison
, 240 Ill. App. 3d 680, 686 (1992). Conversely, no vicarious liability exists for the conduct of independent contractors. 
Petrovich, 
188 Ill. 2d at 31. However, “[v]icarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established.” 
Petrovich
, 188 Ill. 2d at 31.

 Although the majority correctly acknowledges that an attorney may simultaneously be an agent and an independent contractor (slip op. at 9), the majority nevertheless incorrectly holds that “regarding particular conduct [an attorney] is either one or the other, but not both” (slip op. at 15). Based upon the apparent, yet incorrect, premise that the concept of an “agent” and an “independent contractor” are mutually exclusive, the majority concludes that “when attorneys act pursuant to the exercise of independent professional judgment, they possess such considerable autonomy over the details and manner of performing their work that they are presumptively independent contractors for purposes of imposing vicarious liability.” Slip op. at 9. The majority justifies this holding by reasoning that although an attorney is vested with a classic hallmark of an agent– “ ‘the power to act for and to bind the principal in business negotiations within the scope of [the] agency’ ” (slip op. at 9, quoting 
Hoffman & Morton Co. v. American Insurance Co.
, 35 Ill. App. 2d 97, 103 (1962))–an attorney is 
not
 an agent 
because
 he or she is 
also
 an independent contractor who “acts pursuant to the exercise of independent professional judgment.” Slip op. at 9. The majority concludes that, “presumptively,” unless it is shown otherwise, an attorney is not an agent at all. In my opinion, the majority’s holding is inconsistent with fundamental principals of agency law, as set forth above, which provide that: (1) the concepts of “agent” and “independent contractor” are not mutually exclusive; and (2) while the relationship of an attorney to a client may be characterized, in some respects, as that of an independent contractor, it nevertheless remains a relationship of agency to the extent that an attorney is a fiduciary to the client.

Under the majority’s holding, an Illinois attorney, when acting “pursuant to independent professional judgment,” is now considered a nonagent independent contractor. See slip op. at 17. The comments to section 14N of the Restatement (Second) of Agency define a “non-agent independent contractor” as an individual “who contracts to accomplish something for another or to deliver something to another,
 but who is not acting as a fiduciary for the other.
” (Emphasis added.) Restatement (Second) of Agency §14N, Comment 
b
, at 80-81 (1958). I cannot agree with the majority’s apparent position that, as of today, the attorney-client relationship in Illinois is now simply a relationship wherein an attorney, when “acting pursuant to independent professional judgment,” is an independent contractor who does not act as a fiduciary for the client, and who, therefore, neither stands in a position of confidence or trust with respect to the client, nor owes a duty of loyalty or obedience to the client. I cannot support such a result.

For almost a century, this court has repeatedly held that, as a matter of law, the existence of an attorney-client relationship creates a fiduciary relationship between those parties. 
E.g.
, 
In re Imming
, 131 Ill. 2d 239, 252-53 (1989); 
In re Schuyler
, 91 Ill. 2d 6, 11 (1982); 
Gaffney v, Harmon
, 405 Ill. 273, 277 (1950); 
People ex rel. Chicago Bar Ass’n v. Charone
, 288 Ill. 220, 228 (1919). Indeed, the majority readily acknowledges that the relationship between a client and an attorney is fiduciary in nature. See slip op. at 6 (“the attorney-client relationship is a fiduciary relationship”); slip op. at 15 (“attorneys stand in a fiduciary relationship to their clients”). It is well settled that a fiduciary relationship is an 
agency
 relationship. 
Latimer v. Perry
, 410 Ill. 119, 128 (1951); 
American Environmental, Inc. v. 3-J Co.
, 222 Ill. App. 3d 242, 249 (1991). When two parties enter into an agency relationship, “the principal has the right to control the conduct of the agent and the agent has the power to affect the legal relations of the principal.” 
Taylor v. Kohli
, 162 Ill. 2d 91, 95 (1994). Indeed, it is precisely because an attorney 
stands in a fiduciary relationship to the client that the attorney 
has the power to act for and to bind the client to matters within the scope of the attorney’s agency. Restatement (Second) of Agency §1, Comment 
e
 (1958); see also 
In re Marriage of Marr
, 264 Ill. App. 3d 932, 935 (1994) (“Generally, a client is bound by the acts or omissions of his attorney within the scope of the attorney’s authority”); 
Hoffman & Morton Co. v. American Insurance Co.
, 35 Ill. App. 2d 97, 102-03 (1962) (an agent, “[w]hen properly authorized *** makes contracts or other negotiations of a business nature on behalf of the principal, by which his principal is bound”).

Despite acknowledging, as it must, that an attorney-client relationship creates a fiduciary relationship between those parties, the majority nevertheless holds that, when an attorney exercises “independent professional judgment,” the attorney’s status automatically shifts from that of an agent of the client to an independent contractor. In other words, in the view of the majority, an attorney is no longer an agent of the client, even though he or she always stands in a fiduciary relationship to the client, when the attorney acts pursuant to “independent professional judgment.” This reasoning is in error. An attorney’s exercise of “independent professional judgment” is the very essence of the attorney’s relationship to the client. Indeed, Rule 2.1 of the Illinois Rules of Professional Conduct 
mandates
 that, “[i]n representing a client, a lawyer shall exercise independent professional judgment and render candid advice.” 134 Ill. 2d R. 2.1.Therefore, because an attorney is 
required
 to exercise independent professional judgment during the course of representation of a client, the majority’s holding leads to the conclusion that an attorney is a non-agent independent contractor throughout the duration of the client’s representation.

The majority assures that its holding today neither “alter[s] the core relationship between the attorney and client” nor “impact[s] the ability of an attorney to bind his or her client in a traditional representational context.” Slip op. at 16. I disagree. The flaws inherent in the majority’s protestations are apparent from the majority’s statement that it “continue[s] to affirm the long-standing principles of an attorney’s fiduciary obligations,” and the majority’s citation to case law holding that “ ‘a client is bound by the acts or omissions of his attorney within the scope of the attorney’s authority.’ ” Slip op. at 21-22, quoting 
In re Marriage of Marr
, 254 Ill. App. 3d 932, 935 (1994). As set forth above, a fiduciary obligation arises from an agency relationship, a relationship which the majority today holds is nonexistent when an attorney exercises independent professional judgment. Similarly, any discussion of the “scope of the attorney’s authority” is defined by the scope of the attorney’s agency relationship with the client, a relationship which the majority has found does not exist when an attorney exercises independent professional judgment during the representation of a client.

It is my position that, as a result of the majority’s holding that during the course of representing their clients Illinois attorneys are nonagent independent contractors, the court’s opinion today calls into question the ability of attorneys to bind their clients in any legal or business dealings conducted by the attorney on behalf of the client. As stated, it is by operation of agency principles that an attorney has authority to bind a client with respect to acts performed by the attorney within the scope of the agency. It is foreseeable that a client, unhappy with a transaction, would rely upon the majority’s holding to argue that because his or her attorney was merely an independent contractor, the client is not bound by any actions that the attorney performed during the course of the legal representation. Under the majority’s holding, not only is the power of an attorney to act on behalf of a client limited, but those third parties with whom the attorney must deal may legitimately question whether the attorney has the necessary authority to negotiate for and bind the client.

In light of our own long-settled precedent which establishes that the fiduciary relationship between an attorney and client renders an attorney an agent of his or her client, there is considerable cause to question the basis of the majority’s holding in this case that 
because
 an attorney is an independent contractor, the attorney, therefore, is 
not
 an agent of the client. Review of the majority opinion, which not only effectively overrules a long line of precedent, but also calls into question the ability of Illinois attorneys to bind their clients to any matters the attorney engages in on the client’s behalf, appears to lead to the conclusion that this is a decision aimed at achieving a particular result: the nonliability of a client, 
in virtually every instance
, for the intentional torts of the client’s attorney.

The majority attempts to somewhat ameliorate the result in this matter in several ways. The majority repeatedly characterizes its holding that an attorney is an independent contractor as a “presumption” limited to vicarious liability claims against a client based upon an attorney’s alleged intentional tortious conduct. See, 
e.g.
, slip op. at 8 (“[W]e conclude that when, as here, an attorney acts pursuant to the exercise of independent professional judgment, he or she acts presumptively as an independent contractor whose intentional misconduct may generally not be imputed to the client, subject to factual exceptions”); slip op. at 9 (“when attorneys act pursuant to the exercise of independent professional judgment, they possess such considerable autonomy over the details and manner of performing their work that they are presumptively independent contractors for purposes of imposing vicarious liability”); slip op. at 17 (“[F]or purposes of imposing vicarious liability for allegedly tortious conduct, when attorneys act pursuant to independent professional judgment, they are presumptively independent contractors whose alleged misconduct may not be imputed to their clients”). The majority further holds that its presumptive general rule of nonliability may be rebutted, and vicarious liability 
can
 attach, if a plaintiff proves either that (1) the client specifically directed, controlled or authorized the attorney’s precise method of performing the work, or (2) that the client subsequently ratified the attorney’s allegedly tortious acts. Slip op. at 17.

Under the majority’s view, then, it is only upon proof of either of these two elements that an attorney becomes an agent of a client for whose acts the client may be vicariously liable. It would follow, then, that it would only be upon such proof that a client would be bound by the conduct engaged in by his or her hired attorney, because only then would the attorney be considered an agent of the client. As explained above, this holding is contrary to basic black-letter principles of agency law, which stand for the proposition that an attorney may be characterized, simultaneously, as both an agent and an independent contractor. Under the majority’s holding, an attorney will 
never
 be an agent of his or her client, as long as the attorney abides by professional standards of ethics and satisfies his or her obligation to exercise “independent professional judgment” during the representation of the client. In this way, the majority’s presumption effectively becomes irrebutable. In addition, by holding that an attorney is not an agent when acting in accordance with his or her independent professional judgment, the majority also calls into question the fiduciary obligations which an attorney owes to a client as a result of the agency relationship. By dispensing with the agency relationship, the majority also dispenses with the attorney’s fiduciary obligations to the client.

The difficulties which are apt to flow from the majority’s holding cannot be overstated. In addition to the several serious concerns I have outlined above, I note that in practical application the majority’s holding will be unworkable, as the status of an attorney will constantly be in flux. In apparent acknowledgment that its holding is problematic, the majority attempts to explain the result in this case by stating that, “[a]s a fiduciary relationship, there are a myriad of circumstances where attorneys act as agents for their clients. The situation at hand is simply not one of them.” Slip op. at 11. This statement will do little to provide guidance to the bench and bar in addressing similar cases in the future. To the contrary, it will cause additional confusion. After holding that attorneys are nonagent independent contractors, the majority backtracks and states that there are “circumstances” where attorneys act as “agents.” However, under the majority’s holding today, these undefined “circumstances” cannot include actions where the attorney exercises his or her professional judgment, the very reason why an individual retains an attorney’s services in the first place. Accordingly, for the foregoing reasons, I submit that the majority’s holding is untenable.

I am, therefore, in agreement with the dissenting opinion filed by Justice Freeman that the majority errs in holding that attorneys are independent contractors to which traditional agency principles do not apply. My position mirrors that of Justice Freeman to the extent that, under application of basic principles of agency law and this court’s own precedent, an attorney is both an independent contractor and an agent for his or her client. Accordingly, as the attorney-client relationship is one of agency, it is proper to apply principles of agency law in resolving the matter before us. Finally, I also am in agreement with Justice Freeman that the majority relies upon inapposite and unpersuasive authority in arriving at the opposite conclusion.

I cannot join Justice Freeman’s dissent, however, with respect to his conclusion that, under agency law principles, a client, in every instance, is vicariously liable for the intentionally tortious actions of his or her attorney committed within the scope of the agency. It is my position that, as a matter of public policy, a plaintiff who attempts to hold a client liable for the intentional torts of that client’s attorney must show more than the mere existence of an attorney-client relationship. For the reasons set forth below, I would hold that, because an attorney is readily distinguishable from other agents, it should not be presumed that intentional, tortious acts performed by an attorney automatically fall within the scope of the attorney’s agency. Rather, as a matter of public policy, it should be presumed that a client hires an attorney to pursue legal remedies in a lawful and ethical manner, and that because an attorney not only has a fiduciary obligation to his or her client but is also an officer of the court, the client is justified in expecting that any activities engaged in on the client’s behalf are ethical and within the bounds of the law. It is this presumption which should set the parameters of an attorney’s authority in his or her representation of a client.

Attorneys are unique agents. First, an attorney must be licensed by the state, in accordance with both the Attorney Act (705 ILCS 205/0.01 
et seq.
 (West 2002)), and the rules of this court. Although other professions also have licensing requirements, attorneys, in addition to meeting specific academic requirements and passing the bar examination, must also be “of good moral character and general fitness to practice law.” 188 Ill. 2d R. 701(a). In addition, an attorney is different from other licensed professionals in that every person admitted to practice law as an attorney in this state must take and subscribe the following oath: “I do solemnly swear (or affirm, as the case may be), that I will support the constitution of the United States and the constitution of the state of Illinois, and that I will faithfully discharge the duties of the office of attorney and counselor at law to the best of my ability.” 705 ILCS 205/4 (West 2002). The taking of an oath is a condition precedent to the practice of law in this state and is imposed by the legislature. 
In re Anastaplo
, 3 Ill. 2d 471, 475 (1954).

This court has repeatedly made clear that the practice of law is a privilege and not a right. 
In re Anastaplo
, 3 Ill. 2d at 475. It is only upon satisfaction of the above-enumerated requirements that an individual is awarded a license to practice law. A license to practice law makes the holder of that license an officer of the court. 
In re D’Angelo
, 126 Ill. 2d 45, 56 (1988);
 In re Anastaplo
, 3 Ill. 2d at 475; 
In re Both
, 376 Ill. 177, 182 (1941). This court has made it clear that, “a lawyer, as an officer of the court, holds a position of public trust” (
In re Anastaplo
, 3 Ill. 2d at 478), and, as such, “an attorney’s professional conduct must be above reproach” (
In re D’Angelo
, 126 Ill. 2d at 56). Indeed, one court has accurately described attorneys as having a “superior” agency status, due to their unique roles as officers of the court and the heightened duty which attaches to attorneys as a result of this “quasi-judicial status.” 
Clark v. Burden
, 917 S.W. 2d 574, 575 (Ky. 1996). In 
Clark
, the Supreme Court of Kentucky described the attorney-client relationship as follows:

“ ‘The relationship is generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney’s quasi-judicial status as an officer of the court; thus, the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal. Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client’s interest.’ ” 
Clark
, 917 S.W.2d at 575, quoting 
Daugherty v. Runner
, 581 S.W.2d 12, 16 (Ky. App. 1978).

This court has similarly emphasized the heightened duty attendant to attorneys as a result of the unique role attorneys play in our society. We have stated that, because attorneys are officers of the court,

 “it is their duty to aid in the establishment of truth and the due administration of justice. [Citation.] When a license is granted to one to practice law by this court he assumes grave responsibilities, which only those worthy of trust and confidence and possessed of absolute fidelity and honesty should bear. Confidences are reposed in them; interests of great magnitude, and even the life, liberty and character of their fellow-men, are entrusted to their care. [Citation.] A license granted by this court to practice is a guaranty that, so far as this court is advised, the person holding such license is a fit and proper person to assume the responsibilities, to enjoy and safe-keep the confidences of others, and to aid and assist them in the care and management of their legal business and affairs.” 
People ex rel. Chicago Bar Ass’n v. Czarnecki
, 268 Ill. 278, 294 (1915).

See also 
People v. Shirley
, 214 Ill. 142, 150-51 (1905). In other words, “[t]he relation of the court and its attorneys to the people is one of high responsibility, involving on the one hand complete trust and confidence and on the other absolute fidelity and integrity.” 
In re Both
, 376 Ill. at 182.

The preamble to the Rules of Professional Conduct also emphasizes the serious responsibilities attorneys undertake in the practice of law:

“The practice of law is a public trust. Lawyers are the trustees of the system by which citizens resolve disputes among themselves, punish and deter crime, and determine their relative rights and responsibilities toward each other and their government. Lawyers therefore are responsible for *** maintaining public confidence in the system of justice by acting competently and with loyalty to the best interests of their clients; by working to improve that system to meet the challenges of a rapidly changing society; and by defending the integrity of the judicial system against those who would corrupt, abuse or defraud it.” 134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 470.

Because the lawyer-client relationship is a fiduciary relationship based on trust and confidence, “[s]uch confidence can only be maintained if the lawyer acts competently and zealously pursues the client’s interests within the bounds of the law. ‘Zealously’ does not mean mindlessly or unfairly or oppressively. Rather, it is the duty of all lawyers to seek resolution of disputes at the least cost in time, expense and trauma to all parties and to the courts.” 134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 472.

To this end, the Rules of Professional Conduct provide a framework for attorney conduct. For example, Rule 1.2(f)(1) states that a lawyer shall not “file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or reasonably should know that such action would serve merely to harass or maliciously injure another.” 134 Ill. 2d R. 1.2(f)(1). Rule 1.2(i) provides that “[w]hen a lawyer knows that a client expects assistance not permitted by these Rules or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer’s conduct.” 134 Ill. 2d R. 1.2(i). Indeed, Rule 1.16(a)(1) states that “[a] lawyer representing a client before a tribunal shall withdraw from employment (with permission of the tribunal if such permission is required), and a lawyer representing a client in other matters shall withdraw from employment, if: (1) the lawyer knows or reasonably should know that the client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person.” 134 Ill. 2d R. 1.16(a)(1).

Thus, as an officer of the court, an attorney has a heightened duty to deal honestly and fairly with his or her client, with the court and with the public. In obtaining a law license, an attorney takes an oath that he or she will uphold the law, and in granting an attorney a license to practice law, this court has determined that the attorney is a fit and proper person to assume these heightened responsibilities. Accordingly, a client would be justified in having a heightened expectation that his or her attorney will represent the client in a manner that is fair, honest and ethical in all respects. Therefore, I would hold that public policy dictates that the ordinary rules of agency, 
which would make a client vicariously liable for the intentional tortious actions of his or her attorney simply because of the agency relationship which exists as a result of their attorney-client relationship, should not apply to this unique agent. More specifically, I believe that it should not be presumed that the allegedly tortious acts of the attorney were done within the scope of the attorney’s authority. 
Rather, I believe that the most appropriate manner of resolving this issue was proposed by Justice Hoffman, who submitted a separate opinion below. Based upon the premise that attorneys are agents of their clients, Justice Hoffman reasoned that

“the general retention of an attorney to do all things necessary to pursue a claim should, as a matter of law, be interpreted as 
authorizing the attorney only to do all things legal and proper to pursue the claim
 and should not be construed, without more, as giving the attorney direction or permission to commit a tortious act.
 
Where there is no evidence that the client expressly or impliedly authorized, directed, knew of, or ratified the alleged tortious conduct of its attorney, it should not be presumed that, merely because the parties stand in the relationship of attorney/client, the client intended or authorized the tortious conduct or that the conduct was within the scope of the attorney’s duties. The undesirable implications of a contrary position seem rather obvious. Clients who in good faith employ an attorney will be exposed to vicarious liability for the attorney’s tortious conduct when, as a practical matter, the client is in no position to control the attorney’s conduct.” 312 Ill. App. 3d at 199 (Hoffman, P.J., dissenting).

I would hold that, when assessing the liability of a client for the tortious acts of the client’s attorney, we should not presume that the scope of the attorney’s authority extends to encompass intentional misconduct. To the contrary, as a matter of public policy, we should presume that: the client hired the attorney to pursue legal remedies in a legal and ethical manner; and that, because the attorney stands in a fiduciary relationship to the client and is an officer of the court, the client is justified in expecting that the attorney will represent the client ethically and within the bounds of the law. It is this presumption that should define the scope of the attorney’s authority in representing the client. It would then be incumbent upon the party seeking to hold the client liable to rebut this presumption by producing evidence that the client authorized, directed, had knowledge of or ratified the attorney’s misconduct, so as to bring that misconduct within the scope of the attorney’s authority. It is well settled that “[t]he client is not liable *** for acts of the attorney which are outside the scope of the attorney’s authority. Thus, a client is not responsible for any illegal action taken or directed by his attorney which the client did not advise, consent to, participate in, and which was not justified by any authority he had given.” 7A C.J.S. 
Attorney & Client
 §190, at 309 (1980). The proposed analysis which I employ serves not only to protect an innocent client who hired an attorney in good faith who thereafter engaged in misconduct not known to the client, but it would also allow a plaintiff to hold vicariously liable those clients who authorized, directed, had knowledge of or ratified the attorney’s misconduct.

A contrary result imposing vicarious liability upon a client in every instance of intentional tortious misconduct by the client’s attorney would mean that clients would be forced to micromanage the conduct of their attorneys. This would require that the client be appraised of every step taken by the attorney during the course of the legal proceedings. It is precisely because clients have no expertise in the law that they hire attorneys for their specialized legal skill, and it would be manifestly unfair to hold a client liable for the intentional torts of his or her attorney if the client did not authorize or direct those actions, and if the client was unaware of those actions. Indeed, “[m]ost clients cannot possibly monitor their attorneys to the degree that would be required to meet such an obligation, and most, clearly, are not qualified for such monitoring, anyway. Imposing such an obligation on clients would, unjustly, make plaintiffs reluctant to file suit, and defendants far too tentative about defending themselves vigorously. This would not only chill the willingness of *** citizens to vindicate their legal rights, it would make them ultimately responsible for their own representation–the very act for which they hire an attorney in the first place.” 
Bradt v. West
, 892 S.W.2d 56, 77 (Tex. Civ. App. 1994).

In the words of the majority, the holding set forth in its own opinion is “precariously close” to agreeing with the position I take in this dissenting opinion. According to the majority, it is in agreement with my position that a client is not vicariously liable for the intentional torts of his or her attorney unless the plaintiff proffers evidence that the client authorized, directed, had knowledge of or ratified the attorney’s misconduct. Slip op. at 17. The majority also states that it agrees with my position “that it cannot be presumed that an intentional tort as alleged here, or, for that matter, any other illegal or unethical act, lies within the scope of the attorney-client relationship.” Slip op. at 15. The majority further states that it agrees with my position that “it should be presumed, as a matter of public policy,  that clients hire attorneys to pursue legal remedies in a legal and ethical manner; and that, since attorneys stand in a fiduciary relationship to their clients and are officers of the court, clients are reasonably justified in expecting that their attorneys will represent them ethically and within the bounds of law.” Slip op. at 15-16.

The majority states, however, that it departs from my position based upon my agreement with Justice Freeman that “an attorney is both an agent and an independent contractor at all times.” Slip op. at 16. The majority notes, however, that I, unlike Justice Freeman, “distinguish[ ] attorneys from all other types of agents and carve[ ] out an exception to the vicarious liability rule based on that distinction.” Slip op. at 16. Although, in the view of the majority, my position in this dissenting opinion is “not completely untenable,” the majority adheres to the belief that its own opinion “presents the more reasoned approach.” Slip op. at 16. The majority arrives at this conclusion based upon the following reasoning: “Rather than fashion a wholesale exception to the agency rules for attorneys, we merely distinguish situations in the attorney-client relationship where, as here, vicarious liability is claimed by a third party for the alleged intentional tortious conduct of the attorney.” Slip op. at 16.

I respectfully submit that it is the majority which is unnecessarily and improperly creating a wholesale change to the traditional laws of agency with the issuance of its opinion. As explained above, the majority’s holding rests upon incorrect premises and uses reasoning which is sure to engender confusion and uncertainty among the bench and bar. In contrast, the proposed analysis which I employ does not attempt to alter the well-established black-letter principles of agency law, but, instead, seeks to carve out a limited public policy exception to those traditional principles when a plaintiff is seeking to hold a client liable for the intentional torts of the client’s attorney. As set forth above, my proposed analysis is straight-forward. As the attorney-client relationship is one of agency, it is proper to apply principles of agency law in resolving the matter before us. However, because an attorney is a unique agent, as a matter of public policy it should be presumed that a client hires an attorney to pursue legal remedies in a lawful and ethical manner, and, therefore, that only such lawful actions fall within the scope of an attorney’s authority in his or her representation of a client. Accordingly, to hold a client vicariously liable for the intentionally tortious acts of his or her attorney, a plaintiff must proffer sufficient facts to establish that the client authorized, directed, had knowledge of or ratified the attorney’s misconduct, so as to bring that misconduct within the scope of the attorney’s authority.

Applying my proposed analysis to the case at bar, I agree with the appellate court below, and also with Justice Freeman’s dissent, that there are sufficient facts presented to withstand summary judgment. The purpose of summary judgment is to determine whether there are any genuine issues of material fact. 
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986). The grant of summary judgment is appropriate where the pleadings, depositions, admissions, affidavits and exhibits on file, when viewed in the light most favorable to the nonmovant, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2002); 
Petrovich
, 188 Ill. 2d at 31. Although summary judgment is to be encouraged as an expeditious method of disposing of a lawsuit, it is a drastic measure and should be allowed only when the right of the moving party to judgment is free and clear from doubt. 
Olson v. Etheridge
, 177 Ill. 2d 396, 404 (1997). A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not disputed, reasonable minds could differ in drawing inferences from those facts. 
Petrovich
, 188 Ill. 2d at 31. 
The standard of review in cases involving summary judgment is 
de novo
. 
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342, 349 (1998).

Unlike the majority, I cannot conclude that, as a matter of law, Holabird & Root is not liable for the actions of its attorneys and therefore entitled to summary judgment. A review of the record reveals that sufficient evidence was presented by plaintiffs to give rise to a question of fact as to whether Holabird & Root expressly or impliedly authorized, directed, or knew of the alleged tortious conduct of its attorneys, Sabo & Zahn. For example, the record reflects that during his deposition testimony, a principal of Holabird & Root stated that the letters sent out by Sabo & Zahn indicated to him that the law firm was pursuing the fee in an “aggressive way” and that the firm was “serving them as their clients.” The record also reflects that in their depositions, attorneys of the Sabo & Zahn firm stated that in sending out the letters, they were doing what they were hired to do. In addition, in its motion for summary judgment, Holabird & Root stated that the letters were a discovery tool in litigation. The above evidence gives rise to a genuine issue of material fact as to whether the client authorized, directed, or knew of the allegedly tortious acts committed by Sabo & Zahn, and thus created a genuine issue of fact with respect to whether the complained-of acts fell within the attorneys’ scope of authority. As stated, summary judgment is a drastic measure, and is not appropriate when the right of the moving party to judgment is not free and clear from doubt

Finally, even if the actions of Sabo & Zahn were determined to fall outside the scope of its authority in representing Holabird & Root, a genuine issue of material fact remains as to whether Holabird & Root subsequently acquiesced to, or ratified, the misconduct. Ratification occurs when the principal becomes aware of an unauthorized transaction, yet retains the benefits of the transaction or takes a position inconsistent with nonaffirmation. 
Stathis v. Geldermann, Inc.
, 295 Ill. App. 3d 844, 858 (1998). For ratification to take place, the principal must, with full knowledge of the act, evidence an intent to comply with, and be bound by, the transaction. 
Peskin v. Deutsch
, 134 Ill. App. 3d 48, 55 (1985). Ratification may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction. 
Stathis
, 295 Ill. App. 3d at 858.

The majority holds that the circuit court appropriately granted summary judgment on this issue because “[t]he record in this case is devoid of any suggestion that could support an inference Holabird & Root benefitted in any way from Sabo & Zahn’s alleged interference with the business relationships of Horwitz Matthews.” Slip op. at 10. I disagree with the majority. Rather, I am in agreement with the appellate court below that it is unclear from the record before us when Holabird & Root became aware of the letters, and, when they did, if they disapproved of the letters being mailed or whether Holabird & Root’s subsequent silence amounts to a ratification of this conduct. Accordingly, whether the acts or omissions of Holabird & Root constituted a ratification of the conduct of Sabo & Zahn is an issue of fact precluding the entry of summary judgment.

For the foregoing reasons, I would hold that, in the course of representing a client, an attorney is both an agent and an independent contractor. I would also hold that, as a matter of public policy, a plaintiff who attempts to hold a client liable for the intentional torts of that client’s attorney must show more than the mere existence of an attorney-client relationship. Because an attorney is a unique agent, it should not be presumed that intentional, tortious acts performed by an attorney automatically fall within the scope of the attorney’s agency. Rather, as a matter of public policy, it should be presumed that an attorney is authorized only to do all things legal and proper to pursue a client’s claim. In order to hold a client liable for the intentional torts of the client’s attorney, a plaintiff would be required to produce evidence that the client authorized, directed, had knowledge of or ratified the attorney’s misconduct, so as to bring that misconduct within the scope of the attorney’s authority. I also would hold that, under the facts presented in the instant cause, summary judgment was improperly granted. Accordingly, I respectfully dissent from the majority opinion.

JUSTICE GARMAN joins in this dissent.

JUSTICE FREEMAN, also dissenting:

I respectfully dissent.

The question raised in this appeal is simple: May a client be held vicariously liable for tortious conduct committed by counsel during litigation on the client’s behalf in furtherance of that litigation? The majority holds that a client can only be liable when the client “specifically directed, controlled, or authorized the attorney’s precise method of performing the work or *** subsequently ratified acts performed in the exercise of the attorney’s independent judgment.” Slip op. at 9. I believe this position is inconsistent with basic agency law which this court has previously endorsed. The majority’s holding is also inconsistent with previous decisions directly on point by our appellate court, the Seventh Circuit, the Restatement (Second) of Agency, and the vast majority of foreign jurisdictions to have addressed the issue
. Accordingly, I respectfully dissent.

Black-letter agency law tells us that there are three types of relationships in vicarious liability analysis: master/servant, principal/agent, and independent contractor. See Restatement (Second) of Agency §2 (1958). The relationships of master/servant and independent contractor are mutually exclusive–a subordinate is either an independent contractor or a servant, not both. Restatement (Second) of Agency §220 (1958). But the relationships of independent contractor and agent are not mutually exclusive; one may be 
both
 an independent contractor 
and
 an agent, as the appellate majority noted. 312 Ill. App. 3d at 196. See also Restatement (Second) of Agency §2(3) (1958) (“[a]n independent contractor *** may or may not be an agent”). In fact,

“
most
 of the persons known as agents, that is, *** 
attorneys
, *** are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience.” (Emphases added.) Restatement (Second) of Agency §14N, Comment 
a
 (1958).

So far, the majority and I are in agreement–the majority recognizes that “a person may be both an independent contractor and an agent.” Slip op. at 9. Yet, the majority immediately thereafter states that an attorney should not be treated as an agent because of 
precisely
 those attributes which make the attorney an independent contractor–“autonomy over the details and manner of performing their work.” Slip op. at 9. Thus, according to the majority, even though “a person may be both an independent contractor and an agent,” attorneys are not agents, because they are independent contractors. This about-face is confusing at best.

The fact that someone is an independent contractor does not bar the attachment of vicarious liability for his actions if he is an agent, as this court 
explicitly
 held less than five years ago. 
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 31 (1999) (“As a general rule, no vicarious liability exists for the actions of independent contractors. Vicarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established”). To the extent that our decision in 
Gomein 
says otherwise, it is incorrect and was overruled by 
Petrovich
.
(footnote: 1)
 Simply put, a principal is liable for its agent’s conduct within the scope of the agent’s authority. 
Brubakken v. Morrison
, 240 Ill. App. 3d 680, 686 (1992). Liability is not limited to those cases in which the principal authorized the specific conduct of the agent. Restatement (Second) of Agency §216 (1958). Although a principal is not liable for 
physical 
harm caused by negligent 
physical
 conduct of an agent who is also an independent contractor (Restatement (Second) of Agency §250 (1958)), a principal is liable for the agent’s
 conduct in matters which the agent has the right to direct under the agreement creating the agency relation, even if the principal is wholly unaware of the specific conduct in question. Restatement (Second) of Agency §216, Comment 
a
 (1958). Accord 
Peddinghaus v. Peddinghaus
, 314 Ill. App. 3d 900, 904 (2000); 
Letsos v. Century 21–New West Realty
, 285 Ill. App. 3d 1056, 1069 (1996). 
Cf.
 
Woods v. Cole
, 181 Ill. 2d 512, 517 (1998) (“[u]nder the doctrine of 
respondeat superior
, a principal may be held liable for the tortious actions of an agent which cause a plaintiff’s injury, even if the principal does not himself engage in any conduct in relation to the plaintiff”).

The Restatement (Second) of Agency contains an entire title devoted exclusively to “Agents’ Torts–Liability Not Dependent Upon Relation of Master And Servant.” Restatement (Second) of Agency, ch. 7, topic 2, tit. C (1958). Moreover, section 253 of the Restatement speaks to the 
precise
 situation presented in this case. That section, entitled “Tortious Institution or Conduct of Legal Proceedings,” states that

“A principal who authorizes a servant or other agent to institute or conduct such legal proceedings as in his judgment are lawful and desirable for the protection of the principal’s interests is subject to liability to a person against whom proceedings reasonably adapted to accomplish the principal’s purposes are tortiously brought by the agent.” Restatement (Second) of Agency §253 (1958).

The comments to section 253 explain that

“
The principal is liable 
only
 if 
the conduct of the agent is, in part at least, to carry out the purposes of the principal. The situation most frequently arising which involves the rule stated in this Section is that in which 
an
 
attorney at law
 tortiously institutes or continues civil or criminal proceedings, or 
is guilty of
 
oppressive or
 
wrongful conduct during the course of the proceedings, in order that he may enforce a claim of the principal
. The fact that the attorney is subject to discipline by the court does not prevent the client from being liable for his conduct.” (Emphases added.) Restatement (Second) of Agency §253, Comment 
a
 (1958).

Accord 7A C.J.S. 
Attorney & Client 
§190 (1980) (“A client is liable to a third person injured by an act of the attorney done in the execution of matters within his authority, and according to the ordinary rules of agency, a client may be bound by *** the tortious institution, continuation, or prosecution of legal proceedings to enforce the client’s claim”).

Additionally, although the majority contends that “there is no Illinois decision addressing whether clients may be held liable for their attorneys’ alleged intentional torts against a third party undertaken without the direction or knowledge of the client” (slip op. at 6), Illinois courts have imposed vicarious liability for the actions of an attorney in the conduct of litigation. See 
Rankin v. Heidlebaugh
, 321 Ill. App. 3d 255, 266-67 (2001); 
Flight Kitchen, Inc. v. Chicago 7-Up Bottling Co.
, 22 Ill. App. 3d 558 (1974). See also 
Doyle v. Shlensky
, 120 Ill. App. 3d 807, 820 (1983) (“[t]he attorney-client relationship is one of agent-principal[,] *** and the general rule is that ‘the client is bound by the acts and omissions of his lawyer-agent in the prosecution of a remedy’ ”), quoting 
Danforth v. Checker Taxi Co.
, 114 Ill. App. 2d 471, 476 (1969).

Rankin v. Heidlebaugh
 is instructive. There, our appellate court specifically held that the organization Equip for Equality (EFE) was itself directly subject to sanctions under Supreme Court Rule 137 for the actions of its attorney. There was no showing in that case that EFE “specifically directed, controlled, or authorized the attorney’s precise method of performing the work” or “subsequently ratified acts performed in the exercise of the attorney’s independent judgment” (see slip op. at 9). Nevertheless, the appellate court concluded that EFE was sanctionable because “[a] principal is liable for the acts of its agent committed within the scope of her authority. *** [W]e conclude that EFE is responsible as principal for the sanctionable conduct of its agent, Karen Kauffman.” 
Rankin
, 321 Ill. App. 3d at 266-67.

The majority relies heavily on 
In re Berry Publishing Services, Inc.
, 231 B.R. 676 (Bankr. N.D. Ill. 1999), which held that a purchaser in bankruptcy could not hold the trustee liable for purported misconduct by the trustee’s attorney. Slip op. at 6-7. However, as the majority recognizes, 
Berry Publishing
 relied exclusively upon 
Anderson v. Marathon Petroleum Co.
, 801 F.2d 936, 938 (7th Cir. 1986), a case which
 had nothing to do with attorneys. The question there was whether Marathon should be held liable for a tank cleaner’s failure to provide proper respirators to the tank cleaner’s employees. There was no principal/agent relationship between Marathon and the tank cleaner; the question was solely whether that relationship was one of master/servant or the tank cleaner was an independent contractor. 
Berry Publishing
 erred in relying on 
Anderson
 without considering whether the agency nature of the attorney/client relationship was relevant to the vicarious liability analysis. Moreover, 
Berry Publishing
 overlooked Seventh Circuit case law postdating 
Anderson
. See 
Diersen v. Chicago Car Exchange
, 110 F.3d 481, 489 n.9 (7th Cir. 1997) (“ ‘attorney’s errors and misconduct are attributed to his clients. The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent’s deeds’ ”), quoting 
United States v. 7108 W. Grand Ave
., 15 F.3d 632, 634 (7th Cir. 1994). 
Berry Publishing
 also failed to discuss 
Flight Kitchen
. Moreover, 
Berry Publishing
 begins its analysis of this issue by stating that “[u]nder Illinois law a principal is not liable for an agents’ [
sic
] torts, provided the agent is not an employee” 
Berry Publishing
, 231 B.R. at 682), a position which is flatly incorrect. See 
Petrovich
, 188 Ill. 2d at 31 (“[v]icarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established”). The case was wrongly decided and the majority errs in relying upon it.

Further, the split in other jurisdictions is far more lopsided than the majority represents. See slip op. at 7-8. For example, the cases listed in the majority’s “see also” string citation (
Aetna Casualty & Surety Co. v. Protective National Insurance Co.
, 631 So. 2d 305 (Fla. App. 1993); 
Feliberty v. Damon
, 72 N.Y.2d 112, 527 N.E.2d 261, 531 N.Y.S.2d 778 (1988); 
Brown v. Lumbermens Mutual Casualty Co.
, 90 N.C. App. 464, 369 S.E.2d 367 (1988), 
aff’d
, 326 N.C. 387, 390 S.E.2d 150 (1990)) are wholly inapposite. Rather than a third party suing a client for the actions of his attorney, these cases involve a 
client
 suing his attorney and the entity 
paying for 
that attorney, meaning there is no principal/agent relationship between the attorney and the defendant.
(footnote: 2) Also factually distinguishable is 
Baldasarre
, in which an attorney represented both sides of a real estate deal and one client sued the other for the attorney’s failure to disclose information.
(footnote: 3)
 Thus, only two of the foreign cases on which the majority relies are on point. One of these cases, 
Lynn
, must be discounted because it relies wholly on 
Merritt
, which, again, is inapposite. This leaves the majority with a single case which supports it, 
Plant v. Trust Co. Of Columbus
, 168 Ga. App. 909, 310 S.E.2d 745 (1983). However, I note that even the appellate court of Georgia, the majority’s sole supporter, has not decided this issue uniformly. See 
Atlantic Co. v. Farris
, 62 Ga. App. 212, 215-16, 8 S.E.2d 665, 669 (1940) (“the client is bound, according to the ordinary rules of agency, by the acts of his attorney[;] *** the client may be liable for a trespass committed by his attorney that he in no way authorized, except by his general employment of the attorney, or for the tortious institution, continuation, or prosecution of legal proceedings to enforce the client’s claim”).

On the other hand, most of the cases in which the majority concedes that clients have been held liable for their attorneys’ actions, under the precepts of agency law, are quite on point. See, 
e.g.
, 
Southwestern Bell Telephone Co. v. Wilson
, 768 S.W.2d 755 (Tex. Ct. App. 1988); 
Peterson v. Worthen Bank & Trust Co.
, 296 Ark. 201, 753 S.W.2d 278 (1988); 
United Farm Bureau Mutual Insurance Co. v. Groen
, 486 N.E.2d 571 (Ind. App. 1985); 
Nyer v. Carter
, 367 A.2d 1375 (Me. 1977). Indeed, the wealth of authority directly on point which runs counter to the majority is even greater than the majority recognizes. See, 
e.g.
, 
SEI Corp. v. Norton & Co.
, 631 F. Supp. 497, 503 n.6 (E.D. Penn. 1986) (“[client] is liable to [opposing party] for his attorney’s wrongful conduct during the course of the judicial proceeding irrespective of the fact that his attorney may be subject to judicial discipline”); 
Bridge C.A.T. Scan Associates v. Ohio-Nuclear Inc
., 608 F. Supp. 1187, 1197 (S.D.N.Y 1985) (“A client and his attorney stand in the relationship of principal and agent. As such, a client may be responsible for statements made for the purpose of aiding, and within the scope of, his legal representation”); 
Otto v. Levy
, 244 A.D. 349, 353, 279 N.Y.S. 462, 467 (1935) (“As their attorney *** was acting within the general scope of his authority, they are liable for his unlawful act”); 
Hewes v. Wolfe
, 74 N.C. App. 610, 619, 330 S.E.2d 16, 22 (1985) (“In circumstances in which an attorney at law *** is guilty of oppressive or wrongful conduct during the course of the proceeding in order to enforce a claim of the principal, the principal is liable for the attorney’s wrongful acts”). Thus the split in other jurisdictions is not nearly as balanced as the majority suggests. Our holding puts Illinois in a distinct minority.

More importantly, however, the majority disavows basic black-letter principles of agency law when it holds that principals are not liable for their agents’ conduct within the scope and in the service of the agency. See, 
e.g.
, 
Petrovich
, 188 Ill. 2d at 31; 
Rankin
, 321 Ill. App. 3d at 266-67; 
Flight Kitchen
, 22 Ill. App. 3d 558; Restatement (Second) of Agency §253 (1958); 7A C.J.S. 
Attorney & Client 
§190 (1980). See also 
Diersen
, 110 F.3d at 489 n.9.

I recognize the public policy argument that clients should be entitled to assume that attorneys will behave properly. See slip op. at 11-13. It is, of course, reprehensible when an attorney oversteps the bounds of appropriate behavior in the service of his client’s cause. But the whole field of vicarious liability concerns situations in which someone entrusted with authority or responsibility falls short or acts wrongly in their principal’s service. I do not agree that we should create a special rule for attorneys, simply because attorneys are subject to disciplinary rules.

In this regard I note, first, that the Restatement directly states that “[t]he fact that the attorney is subject to discipline by the court does not prevent the client from being liable for his conduct.” Restatement (Second) of Agency §253, Comment 
a
 (1958). See also 
SEI Corp.
, 631 F. Supp. at 503 n.6 (“[client] is liable to [opposing party] for his attorney’s wrongful conduct during the course of the judicial proceeding irrespective of the fact that his attorney may be subject to judicial discipline”). Second, I note that a principal can be held liable even for 
criminal
 actions by his agent–the fact that an agent’s actions are criminal does not 
automatically
 mean that no 
respondeat superior
 liability will lie. 
Deloney v. Board of Education of Thornton Township
, 281 Ill. App. 3d 775, 783 (1996), citing Restatement (Second) of Agency §231 (1958). I assume that the majority is not suggesting that ordinary people are more lax in their observance of the criminal code than attorneys are with respect to the profession’s ethical rules. But otherwise, what is the basis for the majority’s distinction–that an attorney’s tortious conduct is so inherently unforeseeable that a principal cannot be held liable, whereas a normal agent’s 
illegal
 activity may still form the basis for a principal’s liability?

I believe the analogy to violations of the criminal law is instructive, because when courts 
do
 reject vicarious liability in the context of a criminal act by the agent, it is because the criminality of the act is found to have taken the act outside the scope of the employment or agency. I believe that this inquiry forms the proper focus in cases seeking to hold clients liable for the wrongdoing of their attorneys. The question should be whether the attorney was conducting matters with which he had been entrusted, and was motivated at least in part by his desire to serve his client, when he committed the tort. In the case at bar, I agree with the appellate court that there are sufficient facts to survive summary judgment on this issue. See 312 Ill. App. 3d at 196 (principal of Holabird & Root stated in a deposition that the letters the law firm sent out “indicated to him that the law firm was pursuing the fee in an ‘aggressive way’ and that the firm was ‘serving them as their clients’ ”; attorneys stated in depositions that they were doing what they were hired to do; and Holabird & Root asserted in its motion for summary judgment that the letters “were a discovery tool in litigation”). Therefore, there is no basis for concluding as a matter of law that the attorneys’ actions were outside the scope of the agency. And thus, as nearly every court to consider the question has agreed, the client may potentially be held liable for its attorney’s actions.

I finally submit that the rule suggested by the majority is ill-advised as a matter of public policy. I believe the majority is unwittingly encouraging the retention of attorneys who operate at or beyond the boundaries of law and ethics. The majority would hold that no matter what an attorney does, the client is not liable for any acts except those he “specifically directed, controlled, or authorized.” Under such a rule, an unscrupulous client could freely hire an attorney known to “push the envelope” and then, ostrich-like, hide his head in the sand so as to disavow any specific involvement in the attorney’s methods, and walk away from any wrongdoing committed by his chosen agent on his behalf in the service of his cause.

I firmly believe in the upstanding moral character of the membership of the Illinois bar. The Chief Justice’s observations regarding the ethical constraints within which Illinois attorneys are required to operate are entirely correct–although I must note that the majority’s alteration of the laws of agency is not restricted to attorneys licensed in this state, or even in this country. But despite my conviction that very few would stoop to take advantage of it, I cannot endorse the perverse incentive system the majority creates today.

The majority holds that traditional agency principles do not apply in the context of attorneys, a quintessential agent.
(footnote: 4) See 
Link v. Wabash R.R. Co.
, 370 U.S. 626, 633-34, 8 L. Ed. 2d 734, 740, 82 S. Ct. 1386, 1390 (1962) (“Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent”); Restatement (Second) of Agency §14N, Comment 
a
 (1958). Along the way, the majority ignores previous holdings of this court regarding general agency principles (see 
Petrovich
, 188 Ill. 2d at 31; 
Woods
, 181 Ill. 2d at 517), relies on inapposite and ill-founded authority from other jurisdictions, and diverges from the Restatement, 
the Seventh Circuit, and our own appellate court, each of which has arrived at what I submit is the proper conclusion, that a client may be held vicariously liable for the actions of his chosen counsel, his agent, by application of ordinary principles of agency law. The majority’s concern that holding the client accountable for the attorney’s actions will require the client to oversee the attorney’s actions overlooks that 
all
 agency liability is based on the premise that it is the client’s responsibility to choose its agent carefully, at risk of being held liable for their actions if they behave wrongly in promoting the principal’s interests in those actions with the conduct of which they are entrusted.

Accordingly, I respectfully dissent.

FOOTNOTES
1:    
1
The majority distinguishes 
Petrovich
 from 
Gomein
 on the basis that 
Petrovich 
involved apparent and implied authority. Slip op. at 13. These doctrines were involved in 
Petrovich
 because a physician is not an agent of an HMO under ordinary agency principles. But by distinguishing the cases on this basis, and maintaining that 
Gomein
 remains good law, the majority is stating that according to Illinois law a principal is 
not
 liable for the acts of an independent contractor who is an 
actual
 agent (
Gomein
), but a principal 
is
 liable for the acts of an independent contractor who is an 
apparent
 agent (
Petrovich
).

2:     
2
The majority characterizes my criticism of its reliance on these cases as “concern that several of the foreign jurisdiction cases *** are insurance cases” and finds this point to be “of no consequence.” Slip op. at 14. The majority misunderstands me. I have no objection to taking “general propositions of law *** from factually similar cases,” when on-point support is lacking–as it surely is for the majority’s position. My concern is that these cases 
are not factually similar
 because the insurer-defendants did not have an attorney-client relationship with the lawyers whose conduct aggrieved the plaintiffs. In failing to recognize the relevance of the attorney-client agency relationship to vicarious liability analysis the majority sadly repeats the analytical error committed in 
Berry Publishing
. 

3:     
3
The holding of 
Baldasarre
 is also unclear–although the court at one point states that a client cannot be liable for the acts of an attorney, who is an independent contractor, it elsewhere recognizes that an attorney is a client’s agent, and that a principal is ordinarily liable for the tortious acts of an agent acting within the scope of his authority. Compare 
Baldasarre
, 132 N.J. at 288-89, 625 A.2d at 463-64, with 
Baldasarre
, 132 N.J. at 290, 625 A.2d at 464-65. 

4: In its briefings to this court Holabird & Root explicitly states that it does “not dispute[]” that “in Illinois there is an agency relationship between an attorney and client.”